IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BARBARA STANLEY,                *
    Plaintiff
                                               *

    v.                                         Civil Action No. AMD 06-944
                                               *

BALTIMORE COUNTY, MD, et al.,  
    Defendants                   *

                                             ***

MEMORANDUM OPINION

Plaintiff, Barbara Stanley, seeking declaratory and injunctive relief, alleges defendants have violated 42 U.S.C. § 1437, related Department of Housing and Urban Development ("HUD") regulations, *see* 24 C.F.R. § 982, and the federal constitution. Specifically, plaintiff seeks to enjoin defendants from terminating her housing assistance subsidy. The case is before the court on plaintiff's motion for a preliminary injunction. Defendants have filed a response in opposition to the motion. Oral argument was held before the court on May 2, 2006. The motion shall be granted.

I.

Plaintiff resides with her adult son at 97 Alberge Lane, a rental property in Baltimore County, where she is the beneficiary of Section 8 benefits and where she receives Social Security disability benefits and food stamps. The Baltimore County Department of Social Services administers the Section 8 program through its Housing Office and serves as the local public housing agency (PHA). Defendants notified plaintiff, in a letter dated December 15, 2005, that her participation in the Section 8 program would terminate effective on

January 31, 2006. In the letter, defendants informed plaintiff that her benefits were being terminated because she allowed an unauthorized person to reside in the unit without prior approval of the Housing Office in violation of 24 C.F.R. § 928.551(h)(2) and that the information provided with regard to the number of person living in the unit was false, thereby comprising a violation of 24 C.F.R. § 982.551(b)(4).

In the December 15, 2005, notice sent to plaintiff, defendants identified Katie Lynn Kelly ("Kelly") as the alleged unauthorized person plaintiff permitted to live in the unit without prior approval. In addition, the notice stated that the Housing Office had both Motor Vehicle Administration records and Department of Social Services notes evidencing the fact that Kelly resided in the unit. Defendants also informed plaintiff that she was entitled to request an informal hearing within 15 days to contest the Housing Office's decision to terminate her benefits. Defendants also provided plaintiff with a standard pamphlet, which included information about the informal hearing procedures and advised plaintiff that she had a right to representation by an attorney and to discovery (in the form of reviewing her file with the Housing Office). On December 16, 2005, plaintiff requested a hearing.

On March 7, 2006, an informal hearing was held to review the Housing Office's decision to terminate plaintiff's benefits. At the hearing plaintiff claimed that Kelly never resided at the unit and that Kelly's father had changed Kelly's address in the MVA records. Plaintiff failed to arrange for Kelly to be present at the hearing. The Housing Office, represented by Karen Dimattei, rental subsidy specialist, presented various documents,

including a signed handwritten statement by Kelly which it received from DSS, stating that Kelly lived at the plaintiff's home and that she paid plaintiff $20 a week. Additional evidence included documents showing that on September 2, 2005, plaintiff and her son, Curtis Stanley, applied for food stamps, general assistance and medical assistance and that in DSS's computer notes generated at the time of the application, plaintiff told her social worker that her son's girlfriend lived with them and paid rent. Furthermore, a copy of a credit report showed Kelly's "user supplied address" as plaintiff's home.

On March 9, 2006, the hearing officer issued a decision upholding the decision to terminate plaintiff's benefits and on March 14, 2006, plaintiff received the decision. Apparently, plaintiff has received no subsidy after March 1, 2006.

II.

Before a court may issue a preliminary injunction, the court must weigh and evaluate the evidence to assess four interrelated factors, namely: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991); *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 195 (4th Cir.1977). When deciding whether to grant a preliminary injunction, the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied; if such showing is made, the court must then balance the likelihood

of harm to the plaintiff against the likelihood of harm to the defendant. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 (4th Cir.2001); *Safety-Kleen, Inc. (Pinewood) v. Wyche,* 274 F.3d 846, 858-59 (4th Cir.2001); *Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 812 (4th Cir.1991). If the balance of the hardships "tips decidedly in favor of the plaintiff," *Rum Creek,* 926 F.2d at 359 (internal quotation marks omitted), then typically it will "be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation," *Blackwelder,* 550 F.2d at 195 (internal quotation marks omitted). But if the balance of hardships is substantially equal as between the plaintiff and defendant, then "the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success." *Direx,* 952 F.2d at 808 (internal quotation marks omitted).

Plaintiff seeks to enjoin preliminarily defendants from terminating her Section 8 housing benefits. Plaintiff contends that if defendants terminate her housing assistance she is faced with genuine irreparable harm because she can not afford to pay market rate rent and will face the prospect of immediate homelessness. Plaintiff further contends that defendants would suffer no irreparable and that simply granting the preliminary injunction would satisfy the status quo and keep a roof over her head until the case can be heard on the merits..

Defendants argue that plaintiff would not necessarily become homeless but simply would be required to pay market rate or relocate to other affordable housing. Defendants

also contend that to allow plaintiff to remain in the Section 8 housing program despite what they say is a willful violation of HUD regulations would have a chilling effect on the enforcement of regulations by the local housing office.

The court concludes that the balance of harms tips decidedly in favor of plaintiff. Defendant produced no evidence to show that plaintiff possessed sufficient income to pay market rate and remain in her current unit without housing assistance. (There has been no discovery in the case.) The court recognizes the importance of maintaining the ability of the local housing office to enforce HUD regulations, however this concern does not outweigh the potential harm to plaintiff should the decline to issue the injunction.

Turning to the issue of likelihood of success on the merits, plaintiff asserts that she was denied due process in connection with the Housing Office's determination. Defendants argue to the contrary and suggests that plaintiff will not prevail on the merits. They contend that the Housing Office complied fully with HUD regulations and general notions of due process in terminating plaintiff from the program. They point to the substantial evidence adduced on the record to support the decision.

Although the court is not convinced that plaintiff will in fact prevail on the merits, there exists sufficient doubt as to warrant more "deliberate investigation." *Blackwelder*, 550 F.2d at 195. Certainly, there does not appear to be evidence that any violation was willful; after all, plaintiff disclosed Kelly's ostensible status to government officials. Now represented by counsel, plaintiff contends that Kelly, embroiled in a regrettable dispute with

her family, needed a "mail drop" and that she never actually "resided" in the plaintiff's home. Furthermore, counsel assured the court that Kelly would appear as a witness in this case and support plaintiff's assertion that she never took up actual residence in plaintiff's home.

As to the public interest, plaintiff argues that the public interest lies in ensuring that participants receiving housing assistance be afforded full procedural due process before their participation in the program is involuntarily terminated. Defendants argue that the public interest is served in the prevention of fraud in HUD's Section 8 program. The court finds that both considerations are weighty, but concludes that, under the circumstances of the importance of housing assistance to disabled persons such a plaintiff, societal concern for close scrutiny of adverse determinations is paramount.

### III.

Based on the foregoing findings and conclusions, plaintiff's motion for a preliminary injunction shall be granted. An order and a preliminary injunction follow.

Filed: May 5, 2006              /s/
                                Andre M. Davis
                                United States District Judge